IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
WESTERN DIVISION

FILED
04 SEP 27 PM 2:12

ENTERED

SEP 2 7 2004

| | |
|---|---|
| GARY LEE WATSON, CLOY WYMAN OWENS, CLARENCE E. GAINES, HENRY S. SMITH, GARY LEE WATSON, RICKY G. SMITH, and EDDIE J. TUCKER,<br><br>    Plaintiffs,<br><br>vs.<br><br>DRUMMOND COMPANY, INC., MIKE ZERVOUS, individually and in his official capacity as President of Drummond Coal Company; THE UNITED MINE WORKERS OF AMERICA; JOHN STEWART, individually and in his official capacity as President of the Executive Board of District 20 of the United Mine Workers of America; GARY PICKETT, individually and in his official capacity as Secretary-Treasurer of the Executive Board of the United Mine Workers of America; RICK KORNEGAY, MIKE CLEMENTS, KEN HOLBROOK, MIKE KENNEDY, and LARRY PASQUALE, individually and in their official capacities as Board Members of District 20 of the United Mineworkers of America; and DARYL DEWBERRY, individually and in his official capacity on the International Executive Board of the United Mine Workers of America,<br><br>    Defendants. | Civil Action Numbers<br>02-C-2429-W<br>02-C-2430-W<br>02-C-2431-W |

MEMORANDUM OPINION GRANTING THE DEFENDANTS'
MOTIONS FOR SUMMARY JUDGMENT

In these consolidated cases arising under Sections 8(a) and 8(b) of the National Labor

Page 1

55

Relations Act, 29 U.S.C. §§ 151-69 ("NLRA"), the Labor-Management Relations Act of 1947, as amended, 29 U.S.C. §§ 141 *et seq.*, the Employee Polygraph Protection Act of 1988, 29 U.S.C. §§ 2001-2009 ("EPPA"), 42 U.S.C. § 2000, *et seq.* ("Title VII"), and 42 U.S.C. § 1981, all of the Defendants have moved for summary judgment against all of the Plaintiffs. The claims are brought by six former members of District 20 of the United Mine Workers of America who were discharged from their employment at Drummond Company, Inc. ("Drummond"). Because the undisputed facts in this case do not give rise to a genuine dispute as to any material fact, the Defendants are entitled to judgment as a matter of law.

### A. FINDINGS OF UNDISPUTED FACTS

1. All of the Plaintiffs were long-term employees of Drummond until March 2002 and were assigned to Drummond's Shoal Creek Mine.

2. Each of the Plaintiffs was also a member of the Local Union 148 of District 20 of the International United Mine Workers of America ("UMWA").

3. In November 2001, Drummond received a tip that various employees were stealing materials and supplies from its unrepresented warehouse at the Shoal Creek Mine. In response, Drummond hired North American Security Company ("North American") to conduct surveillance at the warehouse.

4. North American's surveillance of the premises continued on December 12, 2001, when Drummond employees discovered North American's surveillance team.

5. Terry Clark, a supply clerk in the warehouse, was implicated in the theft ring.

Law enforcement officials of Jefferson and Walker Counties arrested and charged Clark with theft. Clark admitted to the theft and identified other employees with whom he had committed the crimes.

6. Among others, Clark implicated Dan Patrick, Ralph Harper, Mike Alexander, Earl Cagle, Mike Williams, Ray Wallace, and the following Plaintiffs: Cloy Wyman Owens, Ricky G. Smith, Henry S. Johnson, Eddie Tucker, and Gary Watson.

7. In January 2002, Drummond hired a certified fraud examiner, David P. Frizell, Jr., to conduct its independent investigation of the thefts. Frizell interviewed a confidential employee, as well as seventeen management and unrepresented employees. Frizell also interviewed and took statements from Clark. Frizell found Clark to be a credible witness.

8. Drummond received and reviewed Frizell's recommendations and Clark's statements. Then, by letter dated March 20, 2002, Drummond notified eighteen employees and UMWA members that they were being discharged.

9. Plaintiff Ricky Smith's photograph appears on a videotape which also shows Terry Clark and a car battery owned by Drummond. Clark related to Drummond that the tape reflects Smith receiving the stolen car battery from Clark.

10. Clark informed Drummond that he had exchanged Drummond's materials and supplies (e.g., garbage bags by the case, cleaning supplies, paper products, and a car battery) with Plaintiff Henry Johnson for marijuana and Lortabs.

11. Clark related to Drummond that Plaintiff Gary Watson had stolen various items from the warehouse with Clark's assistance, and that Clark had stolen five gallons of

Drummond's gasoline for Watson.

12. Clark informed Drummond that Plaintiff Eddie Tucker paid Clark fifty dollars ($50.00) to steal a Drummond battery, and that on another occasion, Tucker had given Clark Lortabs in return for materials and supplies stolen from Drummond.

13. Clark told Drummond that he had stolen a car battery and a marine battery from Drummond at the request of Plaintiff Cloy Wyman Owens, and that these batteries were delivered to Owens.

14. Clark stated to Drummond that he had stolen Drummond's motor oil and delivered it to Plaintiff Clarence Gaines at Gaines' request. Clark also stated that he sold drugs for Gaines during work hours on Drummond's premises.

15. The 2002 Wage Agreement between UMWA and Drummond ("the contract") establishes a grievance procedure. The contract provides, among other things, that a bargaining unit employee may be discharged only for "just cause." The grievance procedure has four steps, and culminates in arbitration at step four. At the third step of the procedure, the UMWA District 20 representative takes over the negotiations on behalf of the aggrieved member. Whenever settlement is reached at any step between the UMWA union and Drummond, it is final and binding on the parties.

16. Each of the eighteen discharged employees, including the Plaintiffs, filed a grievance over his termination.

17. The complaints of two grievants, Dan Patrick and Terry Short, were resolved in the first two steps of the process. Patrick was permitted to resign with the understanding that

Drummond would not initiate criminal proceedings against him. Short was suspended for a day, without pay, after a finding that the wire he allegedly stole was scrap.

18. District 20 initially demanded reinstatement with pay of all of the remaining sixteen employees. During negotiations, a union official proposed settling the grievances of Plaintiffs Watson, Owens, Tucker, and Gaines, as well as employee Morris Caffee, by giving each of them an opportunity to take a polygraph test. If the employee passed the test, he would receive an apology and be reinstated with full backpay and seniority. Each of these Plaintiffs declined the offer to take a polygraph test.

19. The District 20 representative Gary Pickett initially declined to press for arbitration of Plaintiff Eddie Tucker's grievance. Subsequently, however, on May 20, 2002, the President of District 20 notified Tucker that he should contact union representatives, Mike Clements or Larry Pasquale, immediately to discuss preparations for arbitrating his grievance. Tucker did not contact either of these district representatives. On June 10, 2002, District 20 notified Tucker that his grievance would not be arbitrated.

20. The grievances of Plaintiffs Owens, Gaines, and Watson were pressed to arbitration. For each of these grievances, the arbitrator found "just cause" for discharge and denied the grievance. Neither of the arbitral decisions was influenced in any way by the grievant's refusal to take a polygraph.

21. Plaintiff Johnson's grievance was also taken to arbitration. The arbitrator upheld the grievance and reinstated Johnson, but without backpay.

22. Plaintiff Smith admitted to the theft offense with which he was charged, although

he claimed that he later brought back the battery. Smith admitted to drinking alcohol on the job. District 20 dropped his grievance after the third step.

23. Morris Caffee's grievance was pressed to arbitration. The arbitrator found there was no "just cause" for his termination. He was reinstated with backpay.

24. Ray Wallace's grievance was negotiated between Drummond and District 20 at the third step. The parties agreed that he would be reinstated.

25. Plaintiffs Watson, Owens, Smith, and Johnson filed unfair labor charges against Drummond and the UMWA with the National Labor Relations Board ("NLRB"). Plaintiffs Gaines and Tucker filed NLRB charges against the UMWA only. The NLRB dismissed all of the charges.

26. Plaintiff Gaines contends that he was treated differently than two white employees who were also initially fired: Ralph Harper and Dan Patrick. As noted earlier, Patrick was permitted to voluntarily resign. Harper also agreed to resign in exchange for Drummond's promise to not initiate criminal proceedings against him. Gaines concedes that he would not have accepted the offer to voluntarily resign if it had been made to him.

### B. CONCLUSIONS OF LAW

1. The Plaintiffs have not proved a breach of contract by Drummond.

2. The Plaintiffs have not proved a breach of the duty of fair representation by any of the UMWA unions or their representatives.

3. The Plaintiffs have not proved a violation of the EPPA.

4. Plaintiff Gaines has not proved his claims of racially disparate treatment.[1]

Based on these Findings and Conclusions, the Defendants' Motions For Summary Judgment, (Docs. 38, 41, 45), will be granted by separate order.

Done this 27th day of September, 2004.

                                                              Chief United States District Judge
                                                              U.W. Clemon

---

[1] Gaines' general allegations of racially disparate treatment do not rise to the level of adverse employment actions.